IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| Flair Airlines, Inc., | ) | |
|     Plaintiff, | ) | Case No: 18 C 2023 |
| | ) | |
| v. | ) | |
| | ) | Judge Ronald A. Guzmán |
| Gregor LLC, Vacabo Services, LLC, | ) | |
| Dusan Milisevic, and Froska Miteva, | ) | |
|     Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

For the reasons stated below, Plaintiff's motion to dismiss the first amended counterclaim ("FAC") [65] is granted in part and denied in part. Any second amended counterclaim, as well as the memorandum discussed in footnote 1, shall be filed within 14 days of the date of entry of this order.

## STATEMENT

**Facts**

Flair is in the business of air transport. (FAC, Dkt. # 54, ¶ 5.) Defendants allege that in 2016, officers of Flair approached Dusan Milicevic ("Dusan"), who has expertise in airline reservation technology, operations, and marketing, to establish a joint venture aimed at expanding Flair's business. (*Id*. ¶¶ 3, 8.) Specifically, Flair, then a charter-flight service, wanted to add commercial routes from locations in the United States to the Caribbean and Latin America. (*Id*. ¶¶ 7-8.) At the time Flair approached Dusan and defendant Gregor LLC ("Gregor")[1], Flair had no capability to engage in reservations, ticketing, or commercial passenger

---

[1] It appears that Dusan and defendant Froska Miteva conducted their business under the name of Gregor, which is identified in the FAC as a Delaware limited liability company with its principal place of business in Park Ridge, Illinois. (FAC, Dkt. # 54, ¶ 6.) Defendants allege that the instant FAC is a compulsory counterclaim under Federal Rule of Civil Procedure 13(a). "No independent basis of federal jurisdiction is needed for a compulsory counterclaim, as long as the court has jurisdiction over the plaintiff's original claim." *Simon v. Nw. Univ*., No. 15 C 1433, 2017 WL 25173, at *3 (N.D. Ill. Jan. 3, 2017). If the FAC is a permissive counterclaim, however, it "requires an independent basis of federal jurisdiction, as it is outside a court's supplemental jurisdiction." *Id*. Defendants allege all state-law claims; thus, if the FAC is permissive, this Court's jurisdiction must be based on diversity. "For diversity jurisdiction purposes, the citizenship of an LLC is the citizenship of each of its members." *Thomas v. Guardsmark, LLC*, 487 F.3d 531, 534 (7th Cir. 2007). If Gregor's members have members, their

service as an airline. (*Id.* ¶ 9.) Pursuant to the alleged agreement, Flair was to provide the capital while Gregor and Dusan's

> colleagues, either personally or through companies owned or controlled by them, would employ their substantial expertise in airline operations [to] rebrand Flair with a new name, logo and advertising; set up a reservation system; set up a website and call center to conduct reservations and customer service; structure the new flight schedule; create means to gain sales and referrals from travel agents worldwide; and develop relationships to create additional revenue streams th[r]ough sale of rental cars, hotels and other travel services through the Flair reservation system.

(*Id.* ¶ 10.B.) According to the FAC, "[a]s part of the contribution of Gregor and Dusan's colleagues to the [j]oint [v]enture, they would tender at no cost an entire existing online booking engine developed for a previous client and worth hundreds of thousands of dollars." (*Id.* ¶ 10.C.) After the development phase was concluded, the elements of the new operation would be transferred to a series of three new companies, owned by Flair, Gregor and other participants in the joint venture, with each new company using the name "Vacabo" in some fashion (the "Vacabo Companies"). (*Id.* ¶ 10.D.)[2] Upon completion of the development of the joint venture, Gregor and Dusan's colleagues would own a combined 70 percent equity interest in each of the three Vacabo Companies, while Flair would own a 30 percent equity interest in each. (*Id.* ¶

---

citizenship must be alleged as well. *Id.* Accordingly, the Court directs Defendants to file within 14 days of the date of entry of this order a brief, with authority, supporting their contention that the FAC is compulsory. *See Simon*, 2017 WL 25173, at *3 (noting that the Seventh Circuit uses the "logical relationship" test to determine whether a counterclaim is compulsory and stating that "[e]ven if two claims are 'technically related,' the relationship between the claims may be insufficient to satisfy Rule 13(a) if the two claims are based on different theories and would raise different legal and factual issues."). If the FAC is permissive, Defendants must supplement their jurisdictional allegations in the second amended counterclaim to properly establish this Court's diversity jurisdiction, including alleging the citizenship of all parties.

[2] As described in the FAC:

> In broad terms, a company called Vacabo Technology would act to hold the technical aspects of the venture; Vacabo Services would run the call center and other reservation systems and conduct general operation of the commercial airline operations (other than flight operations and maintenance, which would remain with Flair), and Vacabo Travel would be a licensed travel agency that would recruit sales, establish relationships with other firms and agencies for sales generation and promotion of the venture.

(FAC, Dkt. # 54, ¶ 10.D.)

10.E.) Defendants further allege that Flair would execute initial three-year contracts with the Vacabo Companies as part of the joint venture and that as a part of those contracts, the companies would be paid to create a profit margin on their services in the amount of 20-25 percent. (*Id*. ¶ 10.G.) From the outset, Flair agreed to pay for Gregor's operating expenses resulting from its work on behalf of the joint venture. (*Id*. ¶ 11.)

In the first half of 2017, Dusan and his colleagues commenced work for the joint venture through Gregor. (*Id*. ¶ 13.) As part of the process of rebranding Flair, Gregor, Gregor D.O.O. Beograd, a Serbian vendor engaged in the design of trademarks and logos for the joint venture, and Dusan purchased a number of domain names for the joint venture using Flair's new rebranded name of "Flair Airlines" (such as flairairlines.com) for use in the joint venture. (*Id*. ¶ 15.) In April 2017, Flair officers informed Dusan that Flair was in negotiations to purchase NewLeaf Travel, a so-called "indirect airline" based in Winnipeg, Manitoba, which sold tickets for flights in Canada while hiring an airline for flight operations. (*Id*. ¶ 19.) Flair informed Dusan that the acquisition would have no effect on the joint venture, as NewLeaf's Canadian operations would be separate from the joint venture. (*Id*.) Flair's acquisition of NewLeaf was completed in June 2017. (*Id*.) Beginning in fall 2017, with Flair's call center operating and the development of Gregor's projects approaching completion, Dusan made requests for execution of contracts between Flair, Gregor and Dusan, and the three Vacabo Companies. (*Id*. ¶ 22.)

Flair officers, however, repeatedly delayed execution of the agreements for the joint venture because, on information and belief, Flair's majority shareholder was negotiating to sell his interest to new investors, Jim Scott and Jerry Presley. (*Id*. ¶ 23.) Flair officers told Dusan that they had explained the joint venture to the new investors, who supported it. (*Id*.) In January 2018, however, Flair's new officers decided to terminate the joint venture, breaching all of the commitments Flair had made with respect to the joint venture and taking control of all intellectual property created by Gregor and others on behalf of the joint venture. (*Id*. ¶ 24.) One of Flair's new officers visited the offices of Gregor and Vacabo Services, LLC ("Vacabo") and explained that Flair's relationship with Vacabo would not be long-term and that it was likely Flair would be moving the call center from Illinois to Canada. (*Id*. ¶ 26.) Dusan and others involved in the joint venture subsequently decided to phase out and completely end their involvement with Flair. (*Id*. ¶ 28.) When Dusan informed the new Flair officers of their decision, Flair asked Dusan and his colleagues not to withdraw from the joint venture; Dusan and his colleagues agreed to continue their full participation in their activities on behalf of the joint venture. (*Id*. ¶¶ 29, 30.) Unbeknownst to Dusan, however, Flair was, at the same time, acting to create a separate website and booking engine in Canada that would be under its complete control. (*Id*. ¶ 31.)

Between February 6 and February 16, 2018, Presley contacted the representatives of Vacabo to state that Flair would be moving the call center to Canada. (*Id*. ¶ 33.) Presley asked that the call center be kept operating in Illinois in the meantime and asked for invoices from Dusan and Vacabo's for services rendered regarding the call center. (*Id*.) On February 20, 2018, while Dusan and his colleagues were maintaining their full participation in the joint venture, Scott sent an email to Dusan stating:

> Be advised that this morning you will be receiving a demand letter with a cease and desist provision from Flair Airlines' legal counsel Miller Thomson LLP. The demand will be for the passwords to Flair's URL sites flairairlines.com and flairairlines.ca. The cease and desist will [demand that you ] . . . stop operating the web-site you currently have representing Flair Airlines.
>
> Flair Airline[s] has integrated the Videcom reservation system into our own new web-site. Your access to Videcom for Flair Airlines has been terminated. Effective immediately Gregor LLC and Vacabo Services LLC no longer represent Flair Airlines. Once legal action has commenced, all communications will be through Mr. Imran Ahmad at Miller Thomson LLP.

(*Id.* ¶ 35.) Invoices tendered by Gregor and Vacabo to Flair remain unpaid, despite demands for payment, and additional amounts over and above the invoiced amounts also remain due and owing from Flair to Gregor and other entities having roles in the joint venture.[3] (*Id.* ¶ 36.) In addition, the booking engine Gregor and Dusan and his colleagues created for Flair is essentially worthless, as it had been customized for Flair operations. (*Id.* ¶ 37.)

Based on Defendants' alleged use of certain domain names that they registered on Flair's behalf, Flair sued Defendants for unfair competition and deceptive trade practices under state and federal law and cybersquatting in violation of the Lanham Act. Defendants subsequently filed the FAC alleging the following state-law claims: breach of contract, account stated, unjust enrichment, breach of fiduciary duty, a claim for a declaratory judgment that Defendants hold ownership and title to the copyrighted material at issue, and breach of the joint venture agreement. Flair moves to dismiss all counts of the FAC.

**Standard**

Under Federal Rule of Civil Procedure 8(a)(2), a complaint generally need only include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). This short and plain statement must "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration in original) (internal quotation marks and citation omitted). The Seventh Circuit has explained that this rule "reflects a liberal notice pleading regime, which is intended to 'focus litigation on the merits of a claim' rather than on technicalities that might keep plaintiffs out of court." *Brooks v. Ross*, 578 F.3d 574, 580 (7th Cir. 2009) (quoting *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002)). "A motion under Rule 12(b)(6) challenges the sufficiency of the complaint to state a claim upon which relief may be granted." *Hallinan v. Fraternal Order of Police of Chi. Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that

---

[3] The other entities and individuals who were purportedly involved in the joint venture are not identified in the FAC.

is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). In other words, the allegations "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

**Analysis**

      A.      <u>Breach of Contract by Gregor (Count I) and Vacabo (Count II)</u>

Flair argues that neither Gregor nor Vacabo states a claim for breach of contract because, as third-party beneficiaries, they have not alleged that the contract, which the Court assumes is the purported unwritten joint venture agreement, was entered into directly and primarily for their benefit. Under Illinois[4] law:

> There is . . . a strong presumption . . . that the contracting parties intend that the terms of their agreement apply only to them, not to others. Even the fact that the contracting parties may have known, expected, or even intended that others would indirectly benefit from their agreement is not enough to overcome the presumption that the contract was intended to directly benefit only the contracting parties. Only direct beneficiaries have rights against the promisor and incidental beneficiaries have no rights whatsoever. If the contract does not identify the plaintiff by name or the class to which he belongs, then the plaintiff is not a third-party beneficiary of the contract.

*James v. SCR Med. Transp., Inc.*, 61 N.E.3d 1043, 1052 (Ill. App. Ct. 2016).

With respect to Gregor, the FAC alleges that "Gregor was a[n] intended beneficiary of the agreement of the parties in creating the Joint Venture that included Flair, Dusan and Froska with others, as the services of Gregor were specifically intended as a part of the expenses of the Joint Venture to be paid by Flair as its contribution to the development of the business of the venture." (FAC, Dkt. # 54, ¶ 39.) It is not clear what this sentence means. The FAC fails to identify the actual parties to the purported agreement (*i.e.*, are Gregor, Dusan, Froska, and unspecified "others" all direct parties to the agreement?). Defendants argue in their response to the motion to dismiss that "Gregor was itself a party to the joint venture" and that Vacabo was an intended third-party beneficiary, but these propositions are not alleged in the complaint. Indeed, if Gregor is a direct party to the alleged joint venture agreement, then it need not rely on a third-party beneficiary theory, as it seems to in Count I of the FAC. Without knowing who the actual parties to the purported joint venture agreement are, the Court cannot make any determination as to which entities might be third-party beneficiaries.

---

    [4] The Court cites Illinois law because the parties do, but notes that no choice-of-law analysis has been addressed by the parties.

Accordingly, the motion to dismiss Gregor and Vacabo's breach of contract counts is granted without prejudice. Defendants may amend their breach of contract allegations within 14 days of the date of entry of this order.

B. Account Stated by Gregor and Vacabo (Count III)

Defendants allege that Gregor submitted invoices to Flair reflecting expenses it incurred in fulfilling its obligations under the joint venture agreement. Flair does not dispute the amounts requested and has not provided any basis for its failure to pay. As another court in this district has explained:

> An "account stated" is a form of proving damages for a breach of a promise to pay on a contract. An account stated:
>
>> determines the amount of a preexisting debt when parties who previously have conducted monetary transactions agree that there truly is an account representing the transactions between them and one party renders a statement of account to another who retains that statement beyond a reasonable amount of time without objection.
>
> The retention of the statement of account for an unreasonable amount of time without objection constitutes an acknowledgment by the receiving party that the balance is due and owing. Merely sending an invoice does not create an account stated unless the debtor or creditor intends to establish a balance due or a final settlement to date. Moreover, an account stated "cannot be made the instrument to create an original liability; it merely determines the amount of the debt where liability previously existed."

*Air Tiger Express (USA), Inc. v. Barclay*, No. 08 CV 1945, 2008 WL 3153333, at *2 (N.D. Ill. June 26, 2008) (internal citations omitted). The Court notes that "an account stated claim 'is merely a form of proving damages for the breach of a promise to pay on a contract,'" and is "[i]In effect, then, . . . merely an alternate theory for proving the same damages asserted in a breach of contract claim." *Fabrica de Tejidos Imperial, S.A. v. Brandon Apparel Grp., Inc.*, 218 F. Supp. 2d 974, 979 (N.D. Ill. 2002). Thus, success on a breach of contract claim precludes recovery on the account stated claim. *Enduracare Therapy Mgmt., Inc. v. Cornerstone Healthcare of Ill., Inc.*, No. 4:05-CV-04112-JPG, 2006 WL 1452824, at *3 (S.D. Ill. May 22, 2006) ("However, should EnduraCare prevail on its claim for breach of the Agreement, the instrument that formed the basis for the transactions between the parties from which the account stated arose, its claim for an account stated will be moot and subject to dismissal.").

Assuming *arguendo* that Gregor and Vacabo are parties or third-party beneficiaries to the joint venture agreement, Defendants have sufficiently alleged a claim for account stated. Flair contends that Defendants do not allege that Flair has assented to an amount due. However, "[r]epeatedly it has been held that where a statement of account is rendered by one party to

another and is retained by the latter beyond a reasonable time without objection, this constitutes recognition by the latter of the correctness of the account and establishes an account stated." *Id.* at *10 (internal quotation marks and citation omitted). While the Court does not, at this time, determine as a matter of law that the circumstances of this case establish Flair's recognition of the correctness of the amount due, Defendants sufficiently allege that they provided an invoice for services rendered pursuant to the joint venture agreement and Flair has not paid.

Nor is the Court persuaded by Flair's assertion that "a single invoice cannot form the basis for [an] account stated claim." (Pl.'s Reply, Dkt. # 99, at 4-5.) The case cited by Flair in support of this contention actually states that "[m]erely sending an invoice does not create an account stated *unless the debtor or creditor intends to establish a balance due or a final settlement to date*." *Air Tiger Express,* 2008 WL 3153333, at *3 (emphasis added). Here, Defendants allege that Flair's officer told Dusan to send an invoice for the work he and others associated with Gregor had completed. Construed in the light most favorable to Defendants, this allegation suggests that the invoice sent by Defendants was intended to establish a balance due for services rendered. To the extent Defendants seek unspecified "additional amounts" outside of those detailed in the invoices, however, this aspect of the account stated claim is dismissed. Defendants cannot recover under an account stated theory for amounts they have not stated.

Accordingly, as discussed above, the motion to dismiss the account stated claim is granted in part and denied in part.

C. <u>Unjust Enrichment by Gregor (Count V) and Vacabo (Count VI)</u>

"To state a claim for unjust enrichment, a plaintiff must allege that the defendant has unjustly retained a benefit to the plaintiff's detriment, and that defendant's retention of the benefit violates the fundamental principles of justice, equity, and good conscience.*" NEXT Payment Sols., Inc. v. CLEAResult Consulting, Inc.*, No. 17 C 8829, 2018 WL 3637356, at *10 (N.D. Ill. July 31, 2018) (internal quotation marks and citation omitted).

In response to the motion to dismiss, Defendants state that they have "mispleaded their claims for unjust enrichment by including by oversight contract allegations" and seek leave to replead the unjust enrichment counts. (Defs.' Resp., Dkt. # 83-2, at 7.) The Court grants Defendants' request and allows them 14 days to file amended unjust enrichment claims.

D. <u>Breach of Fiduciary Duty by Dusan and Froska (Count VII)</u>

"To establish a breach of fiduciary duty under Illinois law a plaintiff must allege (1) a fiduciary relationship; (2) a breach of the fiduciary duty; and (3) injury resulting from the breach." *Lubrizol Corp. v. Olympic Oil Ltd.*, No. 17 C 09075, 2018 WL 1993377, at *4 (N.D. Ill. Apr. 27, 2018). "Fiduciary duties exist as a matter of law in certain relationships including partnerships and joint ventures." *Autotech Tech. Ltd. P'ship v. Automationdirect.com*, 471 F.3d 745, 748 (7th Cir. 2006).

While Flair's basis for dismissing this count changes between the original motion and the reply, it appears to rely on a general argument that Dusan and Froska have not pleaded sufficient facts. According to the FAC, Flair approached Dusan and Froska in 2016 to set up a joint venture for the purpose of expanding Flair's business, pursuant to which Dusan and Froska (among others) would create the operational structure for and market Flair as a passenger airline, and the parties would share the profits. Nevertheless, after investing significant time and money in developing a new route schedule for Flair, creating a new reservation system, establishing a call center in Chicago to accept flight reservations, and recruiting and hiring commercial personnel, among other things, Flair abandoned the purported joint venture, leaving Dusan and Froska with unpaid invoices and a computer booking system that was worthless to them.

The Court concludes that these allegations suffice to state a claim for breach of a fiduciary relationship, particularly in light of the fact that, as the Court concludes below, Defendants have sufficiently alleged the existence of a joint venture agreement (provided the noted clarification as to the parties is made).

> E. Declaratory Judgment (Count VIII)

In this count, Defendants seek a declaration that they are entitled to all rights in and ownership of the "Copyright Material," which they define as "works, as defined by United States Copyright Act, for use in the Joint Venture, including but not limited to a new route schedule, an entire reservation system and website, a booking engine and website, airline seat forecasting templates[, and] reservation and call center manuals." (FAC, Dkt. # 54, ¶ 92.) Flair contends that the count should be dismissed for lack of subject matter jurisdiction because Defendants fail to allege facts establishing a genuine controversy. *Wis. Cent., Ltd. v. Shannon*, 539 F.3d 751, 759 (7th Cir. 2008) ("[T]he ability to bring suit under th[e Declaratory Judgment] Act does not vitiate the constitutional requirement that the claim address 'a case o[r] actual controversy.'") (citation omitted). In particular, Flair contends that, assuming *arguendo* that the cited works are able to be copyrighted, Defendants do not allege that Flair has attempted to assert ownership of the works. The Court agrees. Defendants' allegation that Flair continues to use the works does not create a controversy with respect to ownership. Accordingly, the Court dismisses this claim for lack of subject matter jurisdiction.

Because the Court dismisses this count, it does not address Flair's arguments that the request for declaratory judgment fails to state a claim because Gregor, as a limited liability corporation, cannot be the author of the work absent a written document transferring ownership to it or because Defendants fail to identify the specific authors of the works or what exactly the copyrightable works are.

> F. Breach of Joint Venture Agreement by Gregor, Dusan and Froska (Count XI)

Flair contends that this count fails as a matter of law for three reasons: it fails to allege facts sufficient to establish the existence of a joint venture; the purported oral agreement to form the joint venture and the joint venture agreement itself violate the statute of frauds; and

Defendants admit that they terminated the joint venture agreement approximately one month before Flair allegedly breached the agreement.

"A joint venture exists where there is (1) an express or implied agreement to carry on some enterprise[5]; (2) a manifestation of intent by the parties to be associated as joint venturers; (3) a joint interest as shown by the contribution of property, financial resources, effort, skill or knowledge; (4) a degree of joint proprietorship or mutual right to the exercise of control over the enterprise; and (5) a provision for joint sharing of profits and losses." *Richard Knorr Int'l, Ltd. v. Geostar, Inc.*, No. 08 C 5414, 2010 WL 3419504, at *6 (N.D. Ill. Aug. 25, 2010) (citation omitted). Flair asserts that Defendants fail to plead facts in support of each of the elements, but in federal court, a party need not plead the elements of a claim. As already noted with respect to the breach of contract count, however, the breach of the joint venture count does not identify the alleged parties to the joint venture. The FAC alleges that "Flair on the first part and Dusan and Froska, *acting though Gregor, and colleagues they worked with* on the second part, agreed to a structure for the Joint Venture . . . ." (FAC, Dkt. # 54, ¶ 10) (emphasis added). The breach of the joint venture count, however, is asserted by Gregor, Dusan, and Froska. It is simply unclear from the FAC's allegations which persons or entities were parties (versus third-party beneficiaries or non-parties) to the alleged joint venture. Defendants will be granted leave to amend this count to clarify the parties to the purported agreement. Assuming they do so, the Court rejects Flair's remaining arguments with respect to the viability of the joint venture claim.

With respect to whether Defendants plead sufficient facts in support of a joint venture, it is true that "[t]he legal requirement of a right to manage or control has been interpreted as requiring some right by the parties to direct and govern the conduct of each other in connection with the joint venture." *Quadro Enters., Inc. v. Avery Dennison Corp.*, No. 97 C 5402, 1997 WL 769345, at *3 (N.D. Ill. Dec. 5, 1997). Nevertheless, the Court is required to make all reasonable inferences in the nonmovant's favor and concludes that Defendants' allegations regarding the wide-ranging nature of the work they performed for Flair are an indication that Flair "was extensively involved in the control and management of [Defendants'] activities, as it had to be." (Defs.' Resp., Dkt. # 83-2, at 13.) While Defendants' allegations appear to imply that Flair had more control than Defendants over the management and direction of the purported joint venture, the Court does not find that this precludes Defendants from having stated a claim that a joint venture existed. Whether the facts ultimately demonstrate that a joint venture was formed (as opposed to a contractual business relationship between two entities) is best left for determination after discovery is over and the record is complete.

Flair also asserts that the purported joint venture fails under the statute of frauds. "Illinois law requires that an agreement that cannot be fully performed within one year, or that is for the sale of goods for the price of $500 or more, be in writing and signed by the party against whom enforcement is sought (or his authorized agent)." *Am. Kitchen Delights, Inc. v. Signature*

---

[5] Gregor is named in both the breach of contract and breach of the joint venture counts. Is Gregor an "intended beneficiary" of the joint venture or a party to it?

*Foods, LLC*, No. 16 C 08701, 2018 WL 1394032, at *6 (N.D. Ill. Mar. 20, 2018) (citation omitted). According to Flair, because part of the joint venture purportedly required Flair to enter into three-year contracts with the Vacabo Companies, the alleged joint venture was incapable of full performance within one year, and had to have been in writing, which it was not. However, "[t]he Statute of Frauds . . . is an affirmative defense and a motion to dismiss on that basis can be granted only if it is plain from the face of the complaint that the defense is meritorious." *Id*. at *5. "The writing . . . is not itself required to be a valid contract—it simply needs to be evidence of a valid contract and its essential terms." *Id*. at *6. "Furthermore, the signature required by the statute of frauds need not be handwritten, and a sender's name on an email may be sufficient to satisfy the requirement." *Id*. Because the FAC does not establish that the statute of frauds, assuming it is applicable, precludes a finding that a joint venture agreement was created, the Court denies this basis for dismissal.

Finally, while Flair contends that Defendants allege that they terminated the joint venture prior to Flair allegedly doing so, Defendants note that the FAC alleges that after Defendants indicated they were withdrawing from the joint venture in January 2018, Flair was able to convince Defendants not to do so, and they continued work on the joint venture as contemplated by the parties.

For these reasons, the Court grants in part and denies in part the motion to dismiss the breach of joint venture claim. Defendants may file an amended claim within 14 days of the date of entry of this order, clarifying the identity of the parties to the alleged joint venture agreement.

**Conclusion**

For the reasons stated above, Plaintiff's motion to dismiss the FAC is granted in part and denied in part.

**Date**: September 17, 2018

_____
**Ronald A. Guzmán**
**United States District Judge**